**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**v.**                                           **Crim. Action No. 1:19-cr-43
(Kleeh)**

**ONEIL WAYNE SOUTH,**

    **Defendant.**

**MEMORANDUM ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [DKT. NO. 37], DENYING DEFENDANT'S MOTION AND AMENDED MOTION TO SUPPRESS EVIDENCE [DKT. NOS. 30 & 32], OVERRULING DEFENDANT'S OBJECTIONS [DKT. NO. 38], DENYING SECOND MOTION TO SUPPRESS EVIDENCE [DKT. NO. 48] AND DENYING DEFENDANT'S MOTION IN LIMINE [DKT. NO. 47]**

## I.   <u>Procedural History</u>

The Defendant, Oneil Wayne South("South"), was indicted in a two-count Indictment plus forfeiture allegation charging him with unlawful possession of a firearm as a drug user in violation of 18 U.S.C. § 922(g)(3), § 924(a)(2), and reckless flight from a law enforcement officer in violation of 18 U.S.C. § 13(a) and §7(3) and W. Va. Code §61-5-17(f).

The Defendant thereafter filed a motion to file a pre-trial motion out of time [Dkt. No. 28], on November 18, 2019, which was granted by an order entered the same date [Dkt. No. 29]. Defendant South's *Motion to Suppress Evidence Obtained in Violation of Fourth Amendment Rights* [Dkt. No. 30] was also filed on November 18, 2019, and an amended motion to suppress [Dkt. No. 32] was filed on

November 19, 2020.[1]  The Court referred the motion and amended motion to Magistrate Judge Michael J. Aloi [Dkt. No. 33].  The Government responded to the motion and amended motion to suppress on December 9, 2019 [Dkt. No. 34].  The magistrate judge held a hearing on the suppression issue on December 16, 2019 [Dkt. No. 36].

On December 19, 2019, the magistrate judge issued a thorough Report and Recommendation ("R&R"), recommending that the motion and amended motion to suppress be denied [Dkt. No. 37].  The parties were given 11 days within which to file specific written objections.  Defendant filed objections on December 30, 2019, which largely reiterated his previous arguments [Dkt. No. 38].  He contends that Officer Reed Moran was not able to corroborate "much of the activity" described by the caller who reported a suspicious vehicle and activity in the area of 1369 Locust Avenue; that Officers Moran and Zachary Buck did not have reasonable, articulable suspicion to conduct an investigatory stop of South; and that Officers Moran and Buck lacked sufficient reasonable suspicion that South may have been armed and dangerous [Id.].

The parties appeared on January 6, 2020, for a pre-trial conference [Dkt. No. 39], and reiterated their arguments related

---

[1] The motion and amended motion to suppress appear to be identical except for the inclusion of Exhibit 1, Officer Reed Moran's police report and narrative from the incident in question, to the Amended Motion to Suppress [Dkt. No. 32].

to Defendant's motion and amended motion to suppress. The Court advised the parties that the motion and amended motion to suppress would be denied for the reasons stated in the magistrate judge's R&R and that a written order would follow. On January 22, 2020, without seeking leave of Court to file a pre-trial motion out of time, Defendant filed a *Second Motion to Suppress Defendant's Statements* [Dkt. No. 48]. Defendant filed a *Motion in Limine to Exclude Testimony and Evidence from September 2, 2016* [Dkt. No. 47] on the same date. On January 24, 2020, Defendant filed a *Motion to Schedule Plea Hearing* [Dkt. No. 51] on Count 2 of the Indictment. The Court ordered a continuance of the January 29, 2020, jury trial, directed the Government to respond to South's motions, and scheduled the matter for hearing on February 24, 2020 [Dkt. No. 52]. At the February 24, 2020, hearing, the parties were heard on Defendant's motions and were once again advised that the motions to suppress evidence would be denied, including Defendant's second motion to suppress evidence [Dkt. No. 57]. Defendant pled guilty to Count 2 of the Indictment before Magistrate Judge Aloi on February 26, 2020 [Dkt. No. 62]. Defendant's jury trial is now scheduled to begin on March 3, 2020, at 9:30 a.m. on Count 1 of the Indictment [Id.].

II. **Applicable Law and Legal Standard**

Pursuant to 28 U.S.C. 636(b)(1)(B), a magistrate judge may be designated by a district court to consider motions to suppress

evidence and statements as unconstitutionally obtained. After the magistrate judge has considered such motion, he must submit "'proposed findings of fact and recommendations for the disposition.'" Camry v. Davis, 718 F.2d 198, 199 (4th Cir. 1983). Parties are entitled to file written objections to the findings and recommendations of the magistrate judge, and if a party chooses to object within the allotted 14-day period, the district court shall make a de novo review of the findings and recommendations objected to. Id. and 28 U.S.C. 636(b)(1)(C). Any findings to which no party objects are upheld by the district court unless "clearly erroneous or contrary to law." 28 U.S.C. 636(b)(1)(C). Defendant filed objections to the magistrate judge's R&R concerning the motion and amended motion to suppress [Dkt. No. 38]. All findings challenged by these objections will be reviewed de novo.

The Fourth Amendment provides that "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated…." U.S. Const. Amend. IV. The Supreme Court of the United States has further held that warrantless seizures are "per se unreasonable under the Fourth Amendment, subject to only a few specifically established and well delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). One such exception is the investigative stop, which is also referred to as a Terry

4

stop. Terry v. Ohio, 392 U.S. 1 (1968). A Terry stop has been held to be constitutional when the officer's action is supported by an articulable, reasonable suspicion that the person seized had engaged in criminal activity. United States v. Sokolov, 490 U.S. 1, 7 (1989).

In defining reasonable suspicion, the Court has stated:

> The Fourth Amendment requires 'some minimal level of objective justification' for making the stop. That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence.

Alabama v. White, 496 U.S. 325, 329-30 (1990) (quoting INS v. Delgado, 466 U.S. 210, 217 (1984)). The Court also noted that:

> Reasonable Suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

White, 496 U.S. at 330 (citing Adams v. Williams, 407 U.S. 143 (1972)).

To determine whether reasonable suspicion exists, courts consider "the 'totality of the circumstances' to determine if the officer had a 'particularized and objective basis' for believing that the detained suspect might be armed and dangerous." United States v. George, 732 F.3d 296, 299 (4th Cir. 2013), cert. denied, 134 S.Ct. 1530 (2014) (citations omitted). "A host of factors can contribute to a basis for reasonable suspicion, including the

context of the stop, the crime rate in the area, and the nervous or evasive behavior on the suspect." Id. (Citing Illinois v. Wardlow, 528 U.S. 119, 124 (2000)). Multiple factors may together "create a reasonable suspicion even where each factor, taken alone, would be insufficient." Id. at 300 (citing United States v. Branch, 537 F.3d 328, 339 (4th Cir. 2008)).

Moreover, it is well settled that "as a general rule, Terry stops do not implicate the requirements of Miranda." Unite States v. Streifel, 781 F.2d 953, 958 (1st Cir. 1986). "Absent formal arrest, Miranda warnings only apply 'where there has been such a restriction on a person's freedom as to render him 'in custody.'" United States v. Parker, 262 F.3d 415, 419 (4th Cir. 2001) (quoting Oregon v. Mathiason, 429 U.S. 492, 495 (1977)). "[W]hether a suspect is 'in custody' is an objective inquiry" made after reviewing "all of the circumstances surrounding the interrogation." J.D.B. v. North Carolina, 564 U.S. 261, 270 (2011) (quoting Stansbury v. California, 511 U.S. 318, 322 (1994)). The threshold question is whether, viewed objectively, "a reasonable man in the suspect's position would have understood his situation" to be one of custody. Berkemer v. McCarty, 468 U.S. 420, 442 (1984).

This objective belief, "however, does not necessarily transform a lawful Terry stop into a custodial interrogation requiring Miranda warnings. As [the Fourth Circuit] has reasoned,

'[t]he perception … that one is not free to leave is insufficient to convert a Terry stop into an arrest. A brief but complete restriction of liberty is valid under Terry.'" United States v. Leshuk, 65 F.3d 1105, 1109 (4th Cir. 1995) (quoting United States v. Moore, 81 F.2d 1105, 1108 (4th Cir.), cert. denied, 484 U.S. 965 (1987)).

"Terry stops customarily involve 'detentions where the person detained is not technically free to leave while the officer pursues the investigation.'" Leshuk, 65 F.3d at 1109 (quoting United States v. Manbeck, 744 F.2d 360, 376-77 (4th Cir. 1984), cert. denied, 469 U.S. 1217 (1985)). Accordingly, "[o]fficers my be temporarily detain an individual under Terry for purposes of questioning the individual or attempting to obtain his consent to a search when reasonable suspicion exists." Id. at 1110. "Terry stops differ from custodial interrogation in that they must last no longer than necessary to verify or dispel the officer's suspicion." Id. (citing Florida v. Royer, 460 U.S. 491, 500 (1983) (plurality opinion)).

### III. **Discussion**

A. Motion to Suppress Evidence [Dkt. No. 30] and Amended Motion to Suppress Evidence [Dkt. No. 32]

The facts at issue and a summary of the testimony of Fairmont City Police Officer Reed Moran are set forth in detail in the R&R [Dkt. No. at 2-10], and they will not be recited here. Defendant

7

contends that Officers Moran and Buck lacked reasonable suspicion to conduct an investigatory stop of South on March 8, 2019, and that there was no reasonable, articulable suspicion that criminal activity was afoot at the time they ordered Defendant to stop walking. The Government counters that the officers had the requisite reasonable, articulable suspicion for an investigatory stop because:

> (1) They received a non-anonymous call describing behavior indicative of drug activity around vehicles in a parking lot in the middle of the night and observed the defendant walking away from one of those vehicles; (2) the location of the call was a place for known drug activity and domestic disputes; and (3) the officers knew the defendant's violent criminal history regarding domestic disputes, and possession of drugs and firearms.

[Dkt. No. 34 at 5].

As correctly noted by the magistrate judge, the United States Court of Appeals for the Fourth Circuit has consistently held that "both presence in a high-crime area and 'the late hour of a police encounter can contribute to a finding of reasonable suspicion' for an investigatory stop" [Dkt. No. 37 at 12] (quoting United States v. Foster, 824 F.3d 84, 92 (4th Cir. 2016) (citations omitted). Furthermore, an individual's tip to police may supply part of the basis for reasonable suspicion, and "[a] known informant's tip is generally more reliable than that of an unknown information because the informant 'can be held responsible if her allegations turn out to be fabricated.'" See United States v. Perkins, 363 F.3d 317,

323 (4th Cir. 2004); United States v. Washington, 346 Fed.Appx. 950, 952 (4th Cir. 2009) (citation omitted).

Here, a known caller made two separate calls to dispatch advising of suspicious activity occurring at 1369 Locust Avenue in Fairmont, West Virginia between the hours of 3:00 a.m. and 5:00 a.m. Officer Moran knew that the apartments at 1367 and 1369 Locust Avenue were the location of frequent law enforcement calls for domestic disputes, both verbal and physical, and drug complaints [Dkt. No. 37 at 13]. The area was known for drug activity and more violent crimes [Id.]. Also, when Officer Moran responded, he was able to sufficiently corroborate much of the activity described by the caller [Id.].

The caller described individuals in two vehicles with lighters coming on and off within the cars which, given the location and lateness of the hour, led Officer Moran to reasonably believe that drug activity was likely occurring. The magistrate judge was correct to conclude that all of this information with Officer Moran's corroboration, when taken together, provided meaningful indicia of reliability to the caller's complaints [Id.]. When Officers Moran and Buck responded to the second call, they witnessed a male walking away from one of the suspicious vehicles and he refused to stop walking when asked to do so. Thus, their suspicions were further raised. The Court finds that, under

the totality of the circumstances, they were justified in conducting an investigatory stop.

Likewise, the officers had a reasonable, articulable suspicion that Defendant may be armed and dangerous such that a protective pat down for officer safety was justified. Although "a subsequent frisk of a suspect for weapons is not necessarily permissible" when an investigatory stop is justified by reasonable suspicion, Foster, 824 F.3d at 89 (citations omitted), a frisk is appropriate where "supported by 'reasonable, articulable suspicion that the [suspect] is armed and dangerous.'" Foster, 824 F.3d at 89 (quoting George, 732 F.3d 296, 299 (4th Cir. 2013) (quoting Arizona v. Johnson, 555 U.S. 323, 327 (2009)). In assessing reasonable suspicion that an individual is armed and dangerous, many of the same factors that relate to reasonable suspicion of criminal activity are permissible considerations. Also, an individual's criminal history and prior interactions with law enforcement are probative of whether an individual may be armed and dangerous [Dkt. No. 37 at 14] (citing United States v. Davis, 742 Fed.Appx. 714, 716 (4th Cir. 2018) (citing United States v. Holmes, 376 F.3d 270, 278 (4th Cir. 2004)).

Officers Moran and Buck knew the Defendant and were familiar with his criminal history. Defendant had been the subject of multiple calls for service including domestic disputes, drug violations, and illegal possession of firearms [Dkt. No. 34-1].

Officer Moran himself had previously investigated South for the illegal possession of firearms on September 25, 2016 [Dkt. No. 34 at 7; Dkt. No. 34-1], and, upon approaching him on the night in question, immediately recognized him as Defendant Oneil South. Accordingly, the officers had a reasonable, articulable suspicion that Defendant may be armed and dangerous, and they were justified in conducting a protective pat down for officer safety.

The Court **UPHOLDS** the magistrate judge's findings that a reasonable, articulable suspicion existed for an investigatory stop and for the subsequent protective pat down. Accordingly, the Court **ADOPTS** the report and recommendation [Dkt. No. 37] in its entirety, **DENIES** Defendant's motion to suppress [Dkt. No. 30] and amended motion to suppress evidence [Dkt. No. 32], and **OVERRULES** Defendant's objections [Dkt. No. 38].

B. <u>Second Motion to Suppress Evidence/Statements [Dkt. No. 48]</u>

After the Court advised the parties on January 6, 2020, that it would adopt the R&R and deny Defendant's motion and amended motion to suppress, the Defendant filed a *Second Motion to Suppress Statements* [Dkt. No. 48]. In the latest motion to suppress, Defendant claims the investigatory stop conducted by Officers Moran and Buck was transformed into a custodial stop after a firearm was located on Defendant during the protective pat down for officer safety. After the firearm was found during the pat

11

down search, Officer Moran detected a "long cylindrical object" in Defendant's pocket which he believed to be drug paraphernalia. When he removed it from South's pocket, he asked Defendant what drugs he used, and South replied that he occasionally smoked crack cocaine. Defendant contends that he was in custody and that officers had not explained his procedural rights under Miranda v. Arizona, 384 U.S. 436 (1966). He argues that his statements to Officer Moran were given in response to "police interrogation," and that they must be suppressed as improper [Dkt. No. 48 at 3].

The Government responded to Defendant's second motion to suppress on January 29, 2020, arguing that the Terry stop of Defendant remained non-custodial and that the statements Defendant made during the safety pat down are admissible[2] [Dkt. No. 54]. The facts surrounding the protective pat down and Defendant's statements are enumerated in the R&R [Dkt. No. 37 at 2]. After

---

[2] The Government also explains that Officer Moran testified before Magistrate Judge Aloi on December 16, 2019, to the statements Defendant now seeks to suppress, and that the Government included a copy of the Fairmont Police Department police report containing those statements to its response in opposition [Dkt. No. 34] to Defendant's original motion/amended motion to suppress evidence on December 9, 2019 [Dkt. No. 54 at 1-2]. The Government also notes that Defendant received notice of the statements on or about July 17, 2019, that the deadline for pre-trial motions was December 2, 2019, and that Defendant never sought permission from the Court to file a motion out-of-time in attempt to suppress the statements [Id.]. The Court agrees that the second motion to suppress is time-barred but will consider its merits in the context of reviewing Defendant's previously filed motion/amended motion to suppress.

South first failed to stop walking away from Officer Moran, South denied having been playing loud music and Officer Moran asked him if he had anything on his person that the officer should be aware of. Defendant said "no". Officer Moran advised South that he was going to conduct a pat down search and Defendant was compliant. While conducting the pat down, Officer Moran observed Officer Buck reach under South's shirt and remove a pistol from a shoulder holster. Once the firearm was found, Defendant was handcuffed for officer safety [Dkt. No. 54 at 3].

Officer Moran continued the pat down of Defendant and felt a long, cylindrical object in his front pocket. He then asked Defendant what was in the pocket and Defendant denied knowing. Based upon his training and experience, Officer Moran believed the item could be drug paraphernalia and removed it from South's pocket. The item was a small piece of metal tubing with a piece of copper scrubbing pad placed inside one end. The officer recognized the item as a homemade drug pipe from experience and he asked Defendant what kind of drugs he used. South admitted that he occasionally smoked crack cocaine. Officer Moran then removed all of the items from Defendant's pocket and located a small plastic bag with what appeared to be two crack rocks inside [Dkt. No. 37 at 2-3]. Officer Moran placed Defendant under arrest.

The magistrate judge recommended, and this Court found that the Terry stop of South on March 8, 2019, was valid. Once officers

started the pat down of Defendant and found the pistol that Defendant denied having on his person, he was temporarily secured in handcuffs for officer safety. Officer Moran continued the pat down search during which he discovered evidence corroborating the justifiable, reasonable suspicion that Defendant had engaged in criminal drug activity or was presently engaging in criminal activity. Defendant was not in custody at the time of his statements to Officer Moran and Miranda warnings were not required. See United States v. Hamlin, 319 F.3d 666, 671 (4th Cir. 2003) ("[T]he use of handcuffs did not convert the encounter into a custodial arrest because the use was reasonably necessary to protect the officer's safety.") Officer Moran's questioning of South after finding the cylindrical object in his pocket was within the scope of the brief, investigatory detention, and his responses are admissible for consideration in this case. Thus, the Court **DENIES** Defendant's *Second Motion to Suppress Evidence/Statements* [Dkt. No. 48].

C. <u>Motion in Limine to Exclude Testimony and Evidence from September 2, 2016 [Dkt. No. 47]</u>

Defendant filed a *Motion in Limine to Exclude Testimony and Evidence from September 2, 2016* [Dkt. No. 47] that seeks the exclusion of evidence related to a prior incident in which Defendant was involved in a motor vehicle accident. During the September 2, 2016, incident, law enforcement located crack cocaine

14

on Defendant, and drug paraphernalia, including a straw, aluminum foil (containing crack cocaine, and a Brillo pad, in the vehicle [Dkt. No. 53-1]. The Defendant admitted to law enforcement that he possessed the crack and stated that there were firearms in the trunk of the vehicle [Id.]. Defendant contends that the testimony and evidence from the incident is irrelevant and more prejudicial than probative [Dkt. No. 47].

The Government opposes the motion in limine and argues that the September 2, 2016, incident is evidence of South's prolonged drug use and should be admissible as an element of the offense with which Defendant is charged in Count 1 of the Indictment – the unlawful possession of a firearm as a drug user in violation of 18 U.S.C. § 922(g)(3) [Dkt. No. 53]. The Government notes that to sustain a conviction under § 922(g)(3), it "must prove that Defendant's drug use was 'sufficiently consistent, prolonged, and close in time to his gun possession to put him on notice that he qualified as an unlawful user' under the terms of the statute" [Id.] (citing United States v. Sperling, 400 Fed.Appx. 765, 767 (4th Cir. 2010) (quoting United States v. Purdy, 264 F.3d 809, 812 (9th Cir. 2001)). The Government also refers the Court to the definition of "unlawful user" in the applicable federal regulations, 27 C.F.R. § 478.11:

> A person may be an unlawful current user of a controlled substance even though the substance is not being used at the precise time the person seeks to acquire a firearm

15

or receives or possess a firearm. An inference of current user may be drawn from evidence that reasonably covers the present time, e.g., a conviction for use or possession of a controlled substance within the past year; *multiple arrests for such offenses within the past 5 years if the most recent arrest occurred within the past year*; or persons found through a drug test to use a controlled substance unlawfully, provided that the test was administered within the last year.

(Emphasis added).

As explained during the February 24, 2020, hearing, all "[r]elevant evidence is inherently prejudicial," and only "unfair prejudice" that substantially outweighs the probative value is subject to exclusion under Federal Rule of Evidence 403. See United States v. McRae, 593 F.2d 700, 707 (5th Cir. 1979). The Court finds that testimony and evidence related to the September 2, 2016, incident is relevant to an element of the offense with which Defendant is charged and is not unfairly prejudicial. The Court finds persuasive the Government's argument that the incident makes a material fact – that Defendant is user of drugs over a prolonged period – more likely, and further finds that any potential unfair prejudice can be addressed through a jury instruction. Accordingly, Defendant's motion in limine [Dkt. No. 47] is **DENIED**.

### IV. Conclusion

For the reasons stated herein, the Court:

- **ADOPTS** the magistrate judge's Report and Recommendation in its entirety [Dkt. No. 37];

- **DENIES** Defendant's Motion to Suppress Evidence [Dkt. No. 30];

- **DENIES** Defendant's Amended Motion to Suppress Evidence [Dkt. No. 32];

- **OVERRULES** Defendant's Objections [Dkt. No. 38] to the Report and Recommendation;

- **DENIES** Defendant's Second Motion to Suppress Evidence/Statements [Dkt. No. 48]; and

- **DENIES** Defendant's Motion in Limine to Exclude Testimony and Evidence from September 2, 2016 [Dkt. No. 47].

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this order to all counsel of record.

**DATED:**   March 2, 2020

>  /s/ Thomas S. Kleeh
> THOMAS S. KLEEH
> UNITED STATES DISTRICT JUDGE